# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

Chambers of
Matthew J. Maddox
United States Magistrate Judge
MDD_MJMChambers@mdd.uscourts.gov



101 West Lombard Street
Chambers 3B
Baltimore, Maryland 21201
(410) 962-3407

April 5, 2022

TO ALL COUNSEL OF RECORD

Re:   *Doretha B. v. Kijakazi*
      Civil No. MJM-20-2962

Dear Counsel:

On October 13, 2020, Doretha B. ("Plaintiff") commenced this civil action seeking judicial review of the final decision of the Commissioner of Social Security Administration ("SSA," "Defendant") denying her claims for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"). (ECF 1). Pending before the Court are Plaintiff's Motion for Summary Judgment (ECF 13), Defendant's Motion for Summary Judgment (ECF 14), and Plaintiff's Response to Defendant's Motion (ECF 15).[1] I have reviewed the pleadings and the record in this case and find that no hearing is necessary. Loc. R. 105.6. (D. Md. 2021). The Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed.  42 U.S.C. §§ 405(g), 1383(c)(3); *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020). Under this standard, Plaintiff's motion will be DENIED, Defendant's motion will be GRANTED, and the SSA's decision will be AFFIRMED.

**I.     Background**

Plaintiff filed her applications for DIB and SSI on October 24, 2017, alleging disability beginning May 1, 2015. (R. 21). The applications were initially denied on April 27, 2018, and the initial determination was affirmed upon reconsideration on September 25, 2018. (R. 134-39, 144-45, 149-50).  Thereafter, Plaintiff requested an administrative hearing. (R. 147-148). Administrative Law Judge ("ALJ") Carol Matula held a video hearing on October 14, 2019. (R. 39-61). Plaintiff, who was represented by counsel, testified at the hearing, and a vocational expert appeared and testified via telephone. (*Id.*) The ALJ considered Plaintiff's claims *de novo* and issued a decision denying her claims for DIB and SSI on October 24, 2019. (R. 18-37). On August 17, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (R. 1-6). Plaintiff then filed this civil action seeking judicial review under 42 U.S.C. § 405(g).

---

[1] The parties have consented to proceed before a United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF 3 & 4).

**II.     The SSA's Decision**

In determining Plaintiff's disability claims, the ALJ followed the five-step sequential evaluation of disability set forth in 20 C.F.R. § 416.920.

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination of disability, the ALJ then assesses the claimant's residual functional capacity ("RFC"), "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The ALJ determines the claimant's RFC by considering all of the claimant's medically determinable impairments, regardless of severity. *Id.* The claimant bears the burden of proof through the first four steps of the sequential evaluation. *Id.* If she makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (quoting 20 C.F.R. §§ 416.920, 416.1429).

When mental impairments are alleged, the ALJ must apply the "special technique" to determine the severity of the mental impairments. 20 C.F.R. § 404.1520a. The ALJ is required to rate the limitations in four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself (known as "paragraph B criteria" for mental disorders). *Id.* § 404.1520a(c)(3). The ALJ uses a five-point scale to rate a claimant's limitations in these functional areas: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). The rating is based on the extent to which the claimant's impairment "interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.* § 404.1520a(c)(2). If rating of a limitation is "none" or "mild," then the ALJ generally concludes that the mental impairment is not severe. *Id.* § 404.1520a(d)(1).

In this case, at step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 1, 2015. (R. 23). At step two, the ALJ found that Plaintiff has the following severe impairments: sensorineural hearing loss, obesity, and balance disorder. (*Id.*) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 26). Then, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the exception of certain limitations on particular activities and exposure to particular environmental hazards. (*Id.*) At step

Doretha B. v. Kijakazi
Civil No. MJM-20-2962
March 29, 2022
Page 3

four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. 31). Lastly, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 32). Thus, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from May 1, 2015 through the date of the ALJ's decision. (R. 33).

### III.     Standard of Review

The Court reviews an ALJ's decision to ensure that the ALJ's findings "are supported by substantial evidence and were reached through application of correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id*. (internal quotation marks and citations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal brackets and citations omitted). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id*. (citation omitted).

### IV.     Discussion

Plaintiff raises two issues. She first argues that the ALJ erred at step three by finding that her severe balance disorder did not medically equal a listed impairment. (ECF 13-2 at 10). Relying on Social Security Ruling ("SSR") 17-2p, Plaintiff argues that the ALJ failed to consult a medical expert before concluding that Plaintiff's balance disorder did not medically equal Listing 2.07. (ECF 13-2 at 12-18). Plaintiff's argument misses the mark.

SSR 17-2p provides that to support a finding on medical equivalence at step three, the record must contain:

1. A prior administrative medical finding from a[] [medical consultant] or [psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding,
2. [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or
3. A report from the [Appeals Council's] medical support staff supporting the medical equivalence finding.

2017 WL 3928306, at *3 (S.S.A. Mar. 27, 2017). However, if an ALJ "believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment," SSR 17-2p does not require the ALJ to obtain medical expert evidence or medical support staff input prior to making an unfavorable step-three finding. *Id.* at *4.

Listing 2.07 provides:

> Disturbance of labyrinthine-vestibular function (including Meniere's disease), characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:
>
> A. Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and
> B. Hearing loss established by audiometry.

20 C.F.R. Part 404, Subpart P, App. 1.

Here, the ALJ found that Plaintiff's balance disorder does not medically equal the severity of Listing 2.07. (R. 26). Pointing to specific test results and physician notes in Plaintiff's treatment records, the ALJ concluded that "the record does not show frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing with disturbed function of the vestibular labyrinth demonstrated by caloric or other vestibular tests, and hearing loss established by audiometry." (*Id.*) The ALJ's analysis reflects a reasoned belief that the evidence does not reasonably support a finding of medical equivalence of a listed impairment; therefore, the AJL did not need to obtain medical expert evidence or medical support staff input under SSR 17-2p. 2017 WL 3928306, at *4. Plaintiff disputes the ALJ's assessment of the evidence in the medical equivalence analysis, but such reweighing of the evidence falls outside the scope of this Court's review of the ALJ's decision. *See Johnson*, 434 F.3d at 653; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

The second issue raised by Plaintiff pertains to the ALJ's RFC analysis. Plaintiff argues that the ALJ erred by focusing exclusively on Plaintiff's physical impairments but failing to consider her mental impairments, which the ALJ deemed non-severe at step two. (ECF 13-2 at 23). To make an assessment of Plaintiff's RFC, the ALJ must consider all medically determinable impairments, including impairments that are not severe. *See Mascio*, 780 F.3d at 35 (quoting 20 C.F.R. § 416.945(a)(2)). The mental impairments in question are anxiety, depression, adjustment disorder, and posttraumatic stress disorder (PTSD).

At step two, the ALJ applied the special technique and found that "these impairments cause no more than mild limitation in the mental disorder 'paragraph B' criteria." (R. 24-25). This finding was based upon a reasoned assessment of the opinions of state agency psychological consultants Dr. Howard Leizer, Dr. Madelyn Miranda-DeCollibus, and Dr. Tyler Calabrese concerning Plaintiff's mental impairments. (R. 25) The ALJ noted Plaintiff's "very limited treatment history for her mental impairments and other records showing that she has intact or only mildly impaired cognitive function." (*Id.*) Based on the foregoing, the ALJ concluded that because Plaintiff's mental impairments "cause only mild limitation, they are non-severe." (*Id.*) Plaintiff does not dispute the ALJ's findings at step two.

The ALJ's RFC analysis includes reference to the administrative medical findings of Drs. Leizer, Miranda-DeCollibus, and Calabrese, as well as the findings of two state agency medical

consultants, Dr. Cheryl Arenella and Dr. W. Hakkarinen. (R. 30). Therefore, the ALJ did consider Plaintiff's non-severe mental impairments as part of the RFC analysis. Plaintiff fails to cite or describe any specific limitations arising from her non-severe mental impairments that should have been included in her RFC but were not.

Plaintiff argues that the ALJ erred by merely listing Plaintiff's daily activities as substantial evidence but failed to consider how some of the episodic limitations she reported would interfere with her ability to maintain a job. Plaintiff reported to Dr. Calabrese that "she is able to care for her own personal hygiene, prepare simple meals, clean, and shop for her own needs, but requires frequent breaks and modifications when doing so." (ECF 13-2 at 29 (citing R. 414)). To illustrate that the episodic limitations could be disabling, Plaintiff cites testimony of the vocational expert at the hearing. (ECF 13-2 at 29). Specifically, after stating that "[Plaintiff] testified that twice per week she would get dizzy spells that last between five minutes and 15 minutes and then she would need about an hour to recover," Plaintiff's counsel presented a hypothetical: "If an individual would take one hour unscheduled break twice a week, would that person be able to maintain a job with that quality of productivity?" (R. 60). The expert responded:

> No, that level of break or discontinuance of the work process in a competitive employment situation would be paramount to being absent, so you're talking about somebody who is going to be viewed as absent twice a week by an employer. That's outside the tolerances of maintaining employment.

(R. 60-61).

It is clear from the record, however, that the ALJ did not merely list, and did not solely rely upon, Plaintiff's daily activities in the RFC analysis. As previously discussed, the ALJ evaluated reports from Dr. Calabrese along with those from other state agency psychological consultants and concluded that Plaintiff's activities "are inconsistent with disabling impairment." (R. 30). Moreover, the vocational expert's testimony cited by Plaintiff concerns dizzy spells related to Plaintiff's alleged problem with dizziness, vertigo, and balance. The ALJ discussed this condition extensively at step two and in the RFC analysis. (R. 26, 28-29). As such, Plaintiff has failed to demonstrate that the ALJ erred in determining her RFC. Therefore, remand is not warranted on this issue.

Doretha B. v. Kijakazi
Civil No. MJM-20-2962
March 29, 2022
Page 6

## V.     Conclusion

Because there is substantial evidence to support the ALJ's findings and the findings were reached through application of the correct legal standards, Plaintiff's Motion for Summary Judgment (ECF 13) will be DENIED, and Defendant's Motion for Summary Judgment (ECF 14) will be GRANTED. The SSA's decision will be AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). A separate Order will follow.

Sincerely,

/S/

Matthew J. Maddox
United States Magistrate Judge